**15SL-CC03878**

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| TAIBA HASANOVIC, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action Case No. |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., | ) | Jury Trial Demanded |
| a Delaware Corporation, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE RITZ CARLTON HOTEL COMPANY | ) | |
| OF DELAWARE., L.L.C., A Delaware | ) | |
| Limited Liability Company (Formerly D/B/A the | ) | |
| Ritz-Carlton Hotel Company, a wholly owned | ) | |
| subsidiary of Defendant, Marriott | ) | |
| International, Inc.,) D/B/A The Ritz-Carlton, | ) | |
| St. Louis, a Missouri Fictitious Name Entity, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| Serve: Defendant Marriott International, Inc., | ) | |
| | ) | |
| Reg. Agent: Corporate Creations Network, Inc. | ) | |
| 12747 Olive Boulevard #300 | ) | |
| St. Louis, MO 63141 | ) | |
| | ) | |
| The Ritz Carlton Hotel Company of Delaware, LLC | ) | |
| | ) | |
| Reg. Agent: Corporate Creations Network, Inc. | ) | |
| 12747 Olive Boulevard #300 | ) | |
| St. Louis, MO 63141 | ) | |

### PETITION FOR DAMAGES

Comes now TAIBA HASANOVIC, an individual residing in the State of Missouri, and for her Petition for Damages against Defendants, MARRIOTT INTERNATIONAL, INC. and THE RITZ CARLTON HOTEL COMPANY OF DELAWARE., L.L.C., d/b/a The Ritz-Carlton, St. Louis, states as follows:



## PARTIES

1.   Taiba Hasanovic (Plaintiff) and all parties reside in the County of St. Louis, Missouri at times relevant to this action.

2.   At all relevant times, Defendant Marriott International, Inc., (hereinafter, "Marriot") was a corporation incorporated under and by virtue of the laws of the State of Delaware, having its principal place of business in Bethesda, Maryland. Said Defendant is registered as a Foreign Corporation in the State of Missouri, and was doing business in Missouri by and through its wholly owned subsidiary, Defendant The Ritz Carlton Hotel Company of Delaware., L.L.C. Defendant Marriott's Missouri Registered Agent is Corporate Creations Network, Inc., with offices at 12747 Olive Boulevard #300, St. Louis, MO 63141.

3.   At relevant times, Defendant the Ritz Carlton Hotel Company of Delaware, L.L.C. (hereinafter, "Ritz Carlton") was and is a Limited Liability Company created under and by virtue of the Laws of the State of Delaware, having its principal place of business in Chevy Chase, Maryland and operating a hotel in St. Louis, Missouri located at 100 Carondelet Plaza, Saint Louis County, Missouri 63105. Defendant Ritz Carlton is registered as a Foreign Limited Liability Company in the State of Missouri, having as its registered agent for purposes of receiving process in Missouri, Corporate Creations Network, Inc., located at 12747 Olive Boulevard #300 St. Louis, MO 63141. Both Defendants have been engaged in the hospitality industry at all relevant times.

## VENUE

4.   Venue in St. Louis County, Missouri is proper under Section 508.010 (2015) because this cause of action accrued in said County and all parties may be found in said County.

## JURISDICTION

5. This court has personal jurisdiction of the parties. All parties reside within the territorial jurisdiction of this court. This court has subject matter jurisdiction of the parties' dispute under Article V, Section 14 of the Constitution of the State of Missouri which provides that Missouri's Circuit Courts shall have original jurisdiction over all cases and matters, civil and criminal.

## FACTS

6. At all relevant times Defendants owned and operated a hotel located at 100 Carondolet Plaza, Saint Louis, MO 63105, hereinafter, the "Hotel."

7. At the time of the events occurring in 2009 and 2010 described below, Plaintiff was employed in the Hotel's Housekeeping Department as a housekeeper where her duties included cleaning guest rooms and public areas.

8. Defendants required Plaintiff to use various cleaning solvents and solutions as part of her housekeeping duties.

9. Defendants required Plaintiff to mix and dilute toxic chemicals composing some of the cleaning solutions which she was required to use in her cleaning work.

10. Although mixing of the chemical agents was usually accomplished using a so-called mixing machine, when the machine occasionally malfunctioned, Plaintiff was required to mix and dilute the chemicals by hand.

11. Beginning in early 2009 and for several months thereafter, Plaintiff was also required to clean up renovation construction sites in the Hotel at the end of the construction crews' work day. During the daily clean up process, Plaintiff was exposed to dust from drywall,

wood and other materials which were being cut, sanded and otherwise used in the construction project. Additionally, Plaintiff was exposed to paint fumes and fumes from carpet adhesives as she cleaned the construction areas. The clean up of construction areas had not previously been a part of Plaintiff's duties as a housekeeper. In the past, and on information and belief, this type of construction cleanup was undertaken by an outside firm presumably trained to deal safely with various the exposures inherent in such work.

12. Defendants did not provide Plaintiff with protective masks or otherwise protect her from being exposed on a frequent basis to the inhalation of fumes from paint, adhesives, toxic chemicals, cleaning solvents and dust articles.

13. Shortly after the completion of the renovation construction area which Plaintiff had been cleaning, she began to suffer a chronic cough which, as time passed, would produce blood stained sputum on occasion and by the late fall 2010, she began experiencing episodes of shortness of breath and chest pain with increased frequency.

14. On November 10, 2010, and as she was cleaning a hotel guest room, Plaintiff began to experience left sided chest pain and pain down her left arm and became unable to breathe or speak. She collapsed to her knees. She was promptly hospitalized.

15. On November 10, 2010, Plaintiff was diagnosed with moderate left pleural effusion (an abnormal amount of fluid around her left lung) with probable infiltrates involving the lingula and lower lobe of her left lung. The pleura is a thin membrane that lines the surface of the lungs and the inside of the chest wall outside the lungs. In pleural effusions, fluid accumulates in the space between the layers of pleura.

16. On November 11, 2010, Plaintiff underwent an invasive procedure known as

thoracentesis which involved the insertion of a large needle into her left chest cavity to remove some of the fluid in the space between the pleura in order to determine the cause of the pleural effusion. The procedure was unsuccessful.

17. Plaintiff underwent cardiothoracic surgery on November 15, 2010 consisting of a second thoracentesis involving the placement of two (2) tubes in Plaintiff's left chest cavity, a bronchoscopy and video assisted thorascopic surgery with evacuation of fibrin hematomas and pleural biopsies.

18. After the November 15 surgery, Plaintiff was diagnosed with having pleural fluid of uncertain etiology and scattered pulmonary infiltrates in the pleural layers around her left lung. The chest tubes were left in her chest for several days.

19. On November 18, 2010, Plaintiff suffered a small a partial collapse of her left lung and underwent thoracenteses again in multiple locations and more than a quart of non-clotting collection of blood was withdrawn from the chest cavity and the lung was re-expanded.

20. Plaintiff continued to experience chest pain, fatigue and pain in her upper back and on December 4, 2010, she was diagnosed with pleurisy with effusion with mention of a probable bacterial cause.

21. Plaintiff was later diagnosed with pneumonia with empyema or pus in the pleural space of her left lung and surgical intervention-related collection of blood in the pleural space. She developed pain in her left shoulder and lateral chest wall on the left. She was diagnosed with persistent thoracic pain status post drainage of pleural effusion.

22. Plaintiff was later diagnosed with an aggravation of or return of some preexisting depression due to the pain and immobility of her left arm, her job loss due to her inability to be

further exposed to the toxic chemicals and fumes at work and her inability to help her family with

23. At all relevant times, Defendants, as employers and users of chemical products, had a duty to maintain a safe working environment for its employees, including Plaintiff.

24. Defendants had a duty refrain from exposing Plaintiff to harmful chemicals.

25. Defendants had a duty refrain from exposing Plaintiff to harmful dust particles and paint and carpet adhesive fumes.

26. Defendants had a duty to exercise reasonable care so as not to expose its workers, including Plaintiff, to unreasonable risk of injury.

27. Defendants had a duty to provide their employees, including Plaintiff, with a safe working environment, which included making hazardous conditions safe and warning employees of unsafe or hazardous conditions present in the Hotel's facilities.

28. Defendants had a duty to detect, correct and prevent work practices and dangerous and hazardous conditions which, if undetected, corrected and prevented, would render the work place unsafe for its employees, including Plaintiff.

29. Defendants were negligent and failed to use reasonable care in breach of the aforementioned duties in the following particulars, each of which involved either a failure to recognize, address, protect Plaintiff or warn her about the dangerous nature of toxic substances to which her work exposed her:

    a. Defendants negligently failed to provide Plaintiff with protective masks and/or other protection from the toxic chemicals to which she was exposed;

    b.    Defendants negligently failed to warn Plaintiff of the ill effects associated with repeated exposures to certain toxic chemicals that it required her to use in her daily housekeeping work;

    c.    Defendants negligently failed to warn Plaintiff of the ill effects associated with her repeated exposures to dust particles and paint and adhesives fumes generated during its renovation construction at the Hotel in 2009;

    d.    Defendants negligently failed to protect Plaintiff from exposure to and the ill effects associated with dust, and paint and adhesives fumes generated during its renovation construction at the Hotel in 2009;

    e.    Defendants required Plaintiff to mix by hand undiluted toxic chemicals, negligently failing to adequately protect her from the ill effects of inhaling toxic fumes emitted during the mixing process;

    f.    Defendants negligently failed to warn Plaintiff of the ill effects associated with repeatedly being exposed to toxic chemical cleaning agents, paint fumes, dust and carpet adhesive fumes; and

    g.    Defendants negligently failed to maintain a safe working environment for its employees, including Plaintiff.

30.    As a direct and proximate result of the aforesaid negligence of Defendants, Plaintiff sustained the following injuries and damages, to wit:

    a.    she contracted asthma;

    b.    she was placed at heightened risk for contracting pneumonia and pleural effusion;

c. she sustained damage to her left lung and she suffered irritation of and damage to the lining of her left lung and chest cavity;

d. she can no longer tolerate strong smells or fumes from smoke, perfumes, candles or chemicals;

e. she suffered pleural effusion and a left hemothorax;

f. in the past, she suffered physical pain during and after surgical and other treatments to respond to her work related health conditions;

g. she continues to and will in the future suffer physical pain due to the nerve damage to her left shoulder and chest wall resulting from surgical intervention to relieve the health problems associated with her work related exposures, as well as discomforts associated with her asthma;

h. she experienced psychological, emotional and mental distress as a result of having to cope with the pain and discomfort associated with asthma, the treatment for same, the pleural effusion and nerve damage from surgical intervention to treat the pleural effusion and some preexisting depression was aggravated by and worsened as a result of the circumstances involving the chronic pain and discomfort associated with the nerve damage in her left shoulder, the asthma and diminished self esteem resulting from her inability to help her family with its finances after her job loss;

i. she suffered loss of income in the approximate amount of at least $18,200.00 per year since 2011 and will in the future lose additional earnings from her inability to work in the housekeeping and related fields

for which she may be qualified such that her earning capacity has been diminished;

j. she has been charged for necessary medical, surgical and psychiatric care to treat the health conditions resulting from the defendants' negligence; and

k. her ability to enjoy life and its pleasures has been diminished to her damage.

31. Defendants' requirement that, when they deemed it necessary, Plaintiff dilute and mix by hand certain toxic chemicals known by Defendants to be dangerous, without providing her with protective facial masking or other protection, is such as to rise to the level of reckless indifference to the rights of others so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants, jointly and severally, in such amounts as shall be fair and reasonable as and for the following purposes:

a. damages reflecting the value of medical treatment rendered to Plaintiff that was reasonable, necessary, and a proximate result of the Defendants' negligence;

b. damages reflecting the reasonable value of medical treatment which will be necessary in the future to treat the injuries and conditions which Plaintiff has suffered as a proximate result of the Defendants' negligence;

c. damages to compensate Plaintiff for the loss of income she has sustained and will in the future likely sustain as a proximate result of the Defendants' negligence;

d. non-economic damages means those damages arising from non-pecuniary harm such as pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, and loss of capacity to enjoy life;

e. damages for the physical, mental and emotional pain, suffering and distress suffered by Plaintiff as the result of Defendants' negligence;

f. damages for the diminution of Plaintiff's ability to enjoy life and its pleasures;

g. exemplary or punitive damages to discourage Defendants and other similarly situated entities from failing to adequately protect their employees from occupational disease in the amount of $50,000.00; and

h. her costs herein expended; and for such other and further relief as the Court may determine to be necessary, appropriate and just under the circumstances presented.

Respectfully Submitted,

LAW OFFICES OF STEVEN K. BROWN

/s/ Steven K. Brown
Steven K. Brown, MBE 22907
Attorney for Plaintiff
1221 Locust Street, Suite 500
Saint Louis, MO 63103
(314) 421-2011/(314) 421-6470 fax
steven@skblaw.com